IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

KEVIN MAURICE BRATCHER,

    **Plaintiff,**

v.                                                                                **Civil Action No. 5:10cv90**
                                                                                     **(Judge Stamp)**

**MRS. TINA TILLMAN, LPN Health Services**
**Administrator, Potomac Highlands Regional Jail,**
**MR. EDGAR L. LAWSON, Chief of Operations,**
**West Virginia Regional Jail Authority,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

The *pro se* plaintiff initiated this civil rights action on August 31, 2010, in the United States District Court for the Southern District of West Virginia. Because the plaintiff's complaint concerned his medical care at the Potomac Highlands Regional Jail ("PHRJ") in Augusta, West Virginia, the case was transferred to this Court on September 1, 2010. On December 6, 2010, the plaintiff was granted leave to proceed *in forma pauperis*, and on March 11, 2011, he paid the required initial partial filing fee.

On March 18, 2011, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not appropriate. Accordingly, an Order to Answer was entered, and summonses were issued for the defendants.

On April 18, 2011, defendant Lawson filed his First Motion to Dismiss, and a Roseboro Notice was issued on April 19, 2011. On April 19, 2011, defendant Tillman filed a Motion to Dismiss and alternative Motion for Summary Judgment. On April 26, 2011, a second Roseboro

Notice was issued. On May 2, 2011, the plaintiff filed a response to defendant Tillman's alternative motions. This case is therefore before the undersigned for a Report and Recommendation on the defendants' motions..

## II. Contentions of the Parties

### A. The Complaint

In his complaint, the plaintiff asserts that he has a Baker's Cyst on the back of his left leg. The plaintiff alleges that he experiences pain as the result of this condition. The plaintiff further alleges that the defendants refused to provide him treatment at the PHRJ, other than to provide him pain medication that upset his stomach. He also alleges that they refused to take him to an "outside' doctor. Finally, it appears that the plaintiff alleges that they refused to provide him treatment because they were waiting for him to be transferred to a Division of Corrections facility. For relief the plaintiff seeks, monetary damages for his pain and suffering, or in the alternative, a reduction in his sentence.

### B. Defendant Lawson's Motion to Dismiss[1]

In his Motion to Dismiss, defendant Lawson asserts that the plaintiff has failed to state a cognizable claim regarding his medical care, and more specifically, has made no allegation that he was personally connected with alleged denial of medical care. In addition, defendant Lawson alleges that the plaintiff's claim is barred by the Eleventh Amendment and the Will doctrine. Additionally, defendant Lawson alleges that the plaintiff has failed to exhaust his administrative remedies, and is therefore barred from pursuing his claims regarding medical care. Finally, defendant Lawson alleges

---

[1] Although styled as a Motion to Dismiss, defendant Lawson has attached exhibits, and styled his Memorandum as being in support of a Motion for Summary Judgment.

that the plaintiff's claims are barred under qualified immunity.

**C. Defendant Tillman's Motion to Dismiss/Motion for Summary Judgment**

In support of her motions, defendant Tillman alleges that the plaintiff's neither pleads nor meets the legal threshold for a viable Eight Amendment/Fourteenth Amendment claim. In addition, she alleges that she is entitled to good faith qualified immunity. Defendant Tillman also alleges that the plaintiff failed to exhaust his administrative remedies. Finally, defendant Tillman alleges that the plaintiff's complaint is governed by the West Virginia Medical Professional Liability Act ("MPLA"), and he has failed to comply with the notice of claim and screening certificate requirements of the MPLA.

**D. Plaintiff's Response**

In response to defendant Tillman's Motion to Dismiss/Motion for Summary Judgment, the plaintiff simply expresses his opinion that defendant Tillman has a free pass to do and say what she pleases. Aside from volunteering to take a lie detector test, the plaintiff provides nothing further in support of his complaint.

### III. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

4

**B. <u>Summary Judgment</u>**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson v. liberty lobby, Inc.</u>, 477 U.S. 242, 248 *1986).

In <u>Celotex</u>, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. <u>Celotex</u> at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." <u>Matsushita Electric Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. <u>Id</u>. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u> at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Id.</u> at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

**A. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo., 548 U.S. 81, 126 S. Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

The West Virginia Regional Jail and Correctional Facility Authority provides all inmates with an administrative grievance procedure by which complaints concerning the conditions of confinement

may be addressed. The grievance process begins when the inmate completes an inmate grievance form and submits that form to the Administrator of the facility. The Administrator will review the grievance, and, if warranted, investigate the complaint and promptly provide the inmate with a written decision. That decision will identify any corrective action taken in response to the grievance and/or the reasons the grievance is denied. An inmate who is dissatisfied with the Administrator's response may appeal that decision to the Chief of Operations. The Chief of Operations reviews the grievance, and the response from the Administrator, and issues a written decision identifying any corrective action taken or the reasons for denying the appeal. If the inmate is dissatisfied with the response from the Chief of Operations, he takes a final appeal to the Office of the Executive Director. Plaintiff must complete all three levels of the process to successfully exhaust his administrative remedies.

In support of his Motion to Dismiss, defendant Lawson has submitted an affidavit from John King II, Chief of Operations for the West Virginia Regional Jail and Correctional Facility. This same affidavit is relied upon by defendant Tillman. Mr. King notes that his duties include supervising the Administrators of all regional jails. Mr. King then notes that he has reviewed the Inmate Grievance procedure and the Inmate Correspondence and Grievance Appeal files. Although he found that the plaintiff had written a number of letters concerning his dissatisfaction with the medical services he received, he had made no complaint that he was denied treatment, or that any jail personnel interfered with his ability to receive treatment.

While the content of this affidavit would suggest that the plaintiff did not exhaust his administrative remedies, the affidavit is neither signed nor notarized. Accordingly, the undersigned declines to recommend dismissal on the basis of exhaustion and has addressed the merits of the

plaintiff's claims.

**B. Edgar Lawson**

In order to establish personal liability against a defendant in a § 1983 action, the defendant must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by defendant Lawson, who is the administrator of the PHRJ. Instead, he appears to allege that he is responsible for his staff and their actions. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom for which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction

8

in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against defendant Lawson. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, defendant Lawson could rely on the decision by medical staff to treat the plaintiff with analgesics and not surgery. Consequently, the undersigned finds that the plaintiff has failed to state a claim against defendant Lawson and he should be dismissed as a defendant in this action.

**C. Tina Tillman**

As noted in her Motion to Dismiss, defendant Tillman is a licensed practical nurse, who became the Health Services Administrator for PrimeCare Medical of West Virginia, Inc., at the PHRJ on March 31, 2008. In support of her Motion to Dismiss/Motion for Summary Judgment, defendant Tillman has submitted an affidavit (Doc. 51-1) that summarizes the plaintiff's medical care at the PHRJ as well as at the SCRJ.[2]

Records from the SCRJ reflect that the plaintiff underwent a receiving screening at that facility on January 15, 2009. At that time, he reported taking pain medication for cyst on his left leg. He also reported that he had been treated in Charleston Area Medical Center-General Division by a doctor whose name he could not recall. The plaintiff reported he was to have surgery on June 26, 2009.

---

[2]Prior to his incarceration at the PHRJ, the plaintiff was incarcerated at the South Central Regional Jail ("SCRJ"). Many of the plaintiff's medical records from the SCRJ were sent to the medical unit at the PHRJ when the plaintiff was transferred. Therefore, defendant Tillman's affidavit includes information pertaining to the plaintiff's care at the SCRJ.

On March 3, 2009, Lynn Legg., RN, and at the time the Health Services Administrator of the SCRJ, contacted the office of Clark Adkins, M.D., who was the orthopedic surgeon scheduled to see the plaintiff. Ms. Legg was informed that the plaintiff did have a scheduled appointment on June 29, 2009, but that appointment was for a consultation only. Dr. Adkins office advised Ms. Legg there was no surgery scheduled for the plaintiff.

On March 11, 2009, Antoine Katiny, M.D., who is a physician employed by PrimeCare Medical of West Virginia, Inc., to see and treat inmates at certain regional jails, saw the plaintiff at the SCRJ. His brief examination note indicates that the plaintiff reported a cyst behind his left knee. Dr. Katiny documented that the plaintiff had no complaints of pain. Dr. Katiny assessed the plaintiff as having a small Baker's cyst.

Charleston orthopedic surgeon Clark D. Adkins, M.D., of Bone and Joint Surgeons, Inc., authored a progress note dated March 30, 2009, reflecting his examination and evaluation of the plaintiff's left knee. Based upon Dr. Adkins progress note, the plaintiff reported swelling in the back of his knee since January of 2009. Dr. Adkins' examination revealed no knee effusion. A popliteal cyst was palpated. Otherwise, the plaintiff's knee was stable. X-rays of the plaintiff's knee were interpreted by Dr. Adkins as being essentially normal. Dr. Adkins' assessment was that the plaintiff had a popliteal cyst for which the symptoms were not bad enough to warrant any intervention. Dr. Adkins planned to see the plaintiff on an as needed basis.

The plaintiff was transferred from the SCRJ to the PHRJ on June 19, 2009. Thereafter, the plaintiff submitted numerous Inmate Sick Call Non-Emergency Request forms. Specifically, on August 15, 2009, August 22, 2009, September 3, 2009, September 11, 2009, October 5, 2009, December 4, 2009. February 16, 2009, March 17, 2009, and April 20, 2010. Except for three

occasions, when he refused a nursing sick call, he was seen for each of his requests. His sick call requests pertained primarily to complaints of arthritis and pain in both his knees.

During his incarceration at the PHRJ, the plaintiff was seen by nursing staff on August 17, 2009, when he was directed to continue taking Tylenol and Motrin as needed and to use cool or warm compresses; September 4, 2009, when he was told to take Ibuprofen 200 mg., two tabs twice a day for five days; September 23, 2009, when plans were made to obtain x-rays of his knees; December 5, 2009, when his Motrin was renewed; February 10, 2010, when he was given Ibuprofen 200 mg.; February 18, 2010, when he was told to continue taking Ibuprofen; March 3, 2010, when he was given Ibuprofen 400 mg. to be taken twice a day; March 20, 2010, when plans were made to have him seen by a physician; April 21, 2010, when he was told to continue taking Naprosyn and shown range of motion exercises to perform; June 5, 2010, when he was placed on a list to be seen by a higher level medical provider; July 8, 2010, when a review of the medication administration record indicated that he had not been taking Tylenol with his Naprosyn and was advised to do so.

In addition to his multiple examinations by nursing staff, the plaintiff was seen by James O. Fridley, M.D., on March 23, 2010, for his complaints of arthritic pain in his knees. Dr. Fridley noted pain with palpation of the medial aspect of the plaintiff's right name. He also had a moderate osteoarthritic deformity of the right knee. Because of the assessment of osteoarthritis of the knees, Dr. Fridley started the plaintiff on Naprosyn 375 mg. twice a day. The plaintiff was again seen by Dr. Fridley on June 15, 2010 for a questionable cyst on the back of his left knee. The plaintiff reported that it had been there since January 2009. The plaintiff reported that the cyst was occasionally painful. However, he was unable to report whether the size of the cyst had increased. Dr. Fridley noted a cyst to the left popliteal area of the plaintiff's knee that was non-tender. His

assessment was that it was a Baker's cyst that did not need any particular treatment at that time.

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991). A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir. 1987), cert. denied, 486 U.S. 1006 (1988).[3]

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. Wilson, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. Farmer v. Brennan, 511 U.S.

---

[3] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997)

825, 835 (1994). A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial of nonexistent." *Id.* at 844.

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003)).

In the instant case, even if the plaintiff could establish that either osteoarthritis or a Baker's cyst is a serious medical condition, satisfying the objective component of his Eighth Amendment claim, he cannot satisfy the subjective component of his Eighth Amendment claim, because there is no evidence that any of the medical staff at the PHRJ treated him with deliberate indifference. The information supplied by defendant Tillman indicates that he was seen at sick call each time he made a request. Furthermore, he was given pain medication and x-rays were taken.

13

It is clear from a reading of the plaintiff's complaint and attachments, that the substance of his complaint is that he believes that the Baker's cyst must be removed. However, so long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. See Chance v. Armstrong, 143 F.3d 698, 703 (citing Dean v. Coughlin, 804 F.2d 207, 215 (2nd Cir. 1986) and Estelle 429 U.S. at 106. "The constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves...." "[T]he essential test is one of medical necessity and not simply of desirability." Dean, 804 F.2d at 215 (citations omitted) (alterations in original). Furthermore, the medical care required by Estelle need not be the best possible care, it only has to be "reasonable" care. Vinnedge v. Gibbs, 550 f.2d 926 (4th Cir. 1977); see also Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969); Edwards v. Duncan, 355 F.2d 993 (4th Cir. 1966). Inasmuch as there is no evidence that removal of the cyst is necessary[4], nor that the plaintiff was provided less than reasonable care, his Eighth Amendment Claim against defendant Tillman should be dismissed.

In addition, to the extent that the plaintiff may be seeking to establish a medical negligence claim, he must comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the

---

[4] As previously noted, Dr. Adkins, a Charleston orthopedic surgeon, opined on March 30, 2009, that the plaintiff's symptoms were not bad enough to warrant any intervention.

14

proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

**him and** **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va.

15

2004).[5]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis or treatment of a Baker's cyst or osteoarthritis. Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendant(s)' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's potential state law claims for medical malpractice, summary dismissal is appropriate.

## V. Recommendation

For the reasons stated, the undersigned recommends that defendant Lawson's Motion to Dismiss (Doc. 48) be **GRANTED**, defendant Tillman's Motion to Dismiss and Alternative Motion for Summary Judgment (dckt. 51) be **GRANTED**, and that the plaintiff's complaint be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

**DATED:** September 21, 2011

/s/ David J. Joel
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE